JOY MANAGEMENT COMPANY v CITY OF DETROIT

Docket Nos. 100897, 104378. Submitted February 21, 1989, at Detroit. Decided May 1, 1989. Leave to appeal applied for.

Joy Management Company fell delinquent on its property tax obligation to the City of Detroit in the amount of $2,343 with regard to a structure which was eventually destroyed by fire. The property was insured for fire loss under a policy issued by the Michigan Basic Property Insurance Association, which determined the loss to be $13,218.81. Pursuant to a request by the City of Detroit, the insurer paid on the policy by issuing a check payable jointly to the City of Detroit and Joy Management, which eventually received an amount reduced by the amount of the unpaid tax. Joy Management, on its own behalf and as representative of the class of insureds who have similarly lost their insurance proceeds to the City of Detroit, filed in Wayne Circuit Court a complaint for wrongful seizure against the City of Detroit, Michigan Basic Property Insurance Association and all insurers who had allowed the City of Detroit to seize insurance proceeds as payment of property taxes. The City of Detroit (hereafter defendant) moved for summary disposition for failure to state a claim, contending that seizure of insurance proceeds in satisfaction of delinquent property taxes was authorized under § 47 of the General Property Tax Act, MCL 211.47; MSA 7.91. The trial court, Helene N. White, J., denied the motion. In its motion for reconsideration, defendant additionally contended that plaintiff's claim is in the nature of an action for a tax refund which is within the exclusive and original jurisdiction of the Tax Tribunal. The trial court again denied summary disposition in favor of defendant. On subsequent cross-motions for summary disposition brought by plaintiff and defendant, the court denied defendant's motion and granted partial summary judgment in favor of plaintiff, ruling that fire insurance proceeds are not a type of personal property that can be seized or distrained and sold to satisfy unpaid taxes pursuant to § 47. Defendant filed two

REFERENCES

Am Jur 2d, State and Local Taxation §§ 866 et seq.
See Index to Annotations under Taxes.

appeals by leave granted from the trial court orders denying summary disposition in favor of defendant.

The Court of Appeals consolidated the appeals and *held:*

1. The Tax Tribunal has exclusive and original jurisdiction over a proceeding for direct review of a taxing authority's determination relating to property tax assessments, valuations, rates, special assessments, allocation or equalization, and over a proceeding for a property tax refund or redetermination. Here, where plaintiff's action involves none of the above, but instead involves a challenge over the legality of the method used by defendant in collecting the property taxes in this case, the trial court correctly determined that the action is not within the exclusive jurisdiction of the Tax Tribunal and therefore is properly before the circuit court.

2. In ruling that § 47 provided no authority for the seizure of the insurance proceeds, the trial court did not enjoin defendant from collecting property taxes by any of the methods authorized under the General Property Tax Act and thus did not violate MCL 211.114; MSA 7.168, which provides that no injunction shall issue to stay proceedings for the assessment or collection of property taxes.

3. Under a plain reading of § 47 prior to its amendment at times subsequent to this action, personal property such as a right under an insurance policy or proceeds from such policy in the hands of the insurer which cannot be distrained, seized and sold in fact or in law may not be seized.

4. Section 47 provides that the amount of property distrained must not be excessive and, if it is, the seizure is illegal. The seizure in this case was excessive and therefore illegal.

5. Defendant, as a home rule city, cannot exceed its charter powers and confer prohibited authority upon itself. Under its charter, defendant is limited to the remedy of an action for foreclosure on its tax lien. Thus, even if § 47 allowed the collection method disputed in this case, defendant's charter does not authorize it to do so.

Affirmed.

TAXATION — GENERAL PROPERTY TAX ACT — SATISFACTION OF DELIN-
QUENT TAXES — SEIZURE OF FIRE INSURANCE PROCEEDS.

A township or city treasurer, in collecting delinquent taxes levied under the General Property Tax Act, lacks authority to distrain or seize from a fire insurer any proceeds payable to the taxpayer under a policy of fire insurance on the property for which the taxes are owed (MCL 211.47; MSA 7.91).

*Irving M. Stahl,* for Joy Management Company.

*Peter W. Macuga, II,* Supervising Assistant Corporation Counsel, and *Thomas C. Bromell* and *Mary Richman,* Assistant Corporation Counsel, for City of Detroit.

Before: MICHAEL J. KELLY, P.J., and DOCTOROFF and CAVANAGH, JJ.

DOCTOROFF, J. The City of Detroit (hereinafter defendant) appeals by leave granted from two orders entered by the Wayne Circuit Court. These orders have been consolidated on appeal. In the first order, entered May 18, 1987, the trial court denied defendant's motion for summary disposition under MCR 2.116(C)(4), lack of subject-matter jurisdiction, thereby rejecting defendant's claim that the Michigan Tax Tribunal had exclusive and original jurisdiction over these proceedings. We affirm the order in Docket No. 100897.

On September 1, 1987, the court issued a written opinion which addressed the parties' cross-motions for summary disposition. The court ruled that fire insurance proceeds are not a type of personal property that can be seized or distrained and sold to satisfy unpaid taxes pursuant to § 47 of the General Property Tax Act, MCL 211.47; MSA 7.91. An order denying defendant's motion for summary disposition and granting partial summary disposition in favor of plaintiff was entered on October 23, 1987. The order, in part, enjoined defendant from claiming, asserting or imposing any liens for unpaid property taxes or unpaid water or sewage bills as against insurance proceeds. We affirm the order in Docket No. 104378.

Plaintiff, Joy Management Company, was the owner of property located at 3310 Lothrop, Detroit, Michigan. This property was insured against fire damage with Michigan Basic Property Insurance

Association. The structure was completely destroyed by fire and an insurance claim was filed. The amount of loss arising out of the property damage was determined to be $13,218.81. Relying on § 47, defendant claimed a lien on plaintiff's insurance proceeds for unpaid general property taxes, and made demand upon Michigan Basic to be included as a named payee on the proceeds check. Michigan Basic honored defendant's demand and informed plaintiff that the payment of insurance proceeds would be made jointly to plaintiff and defendant.

A check for the insurance proceeds was issued with plaintiff and defendant as named payees. Defendant refused to endorse the check without payment of the back taxes. Plaintiff eventually agreed to endorse the check and receive the net proceeds after $2,343 in taxes were paid from the proceeds. At no time has plaintiff denied that it owed the taxes or that the taxes constituted a first lien on the real property.

On February 25, 1986, plaintiff, on its own behalf and as representative of the class of insureds who had "lost" their insurance proceeds to defendant for unpaid taxes, filed a complaint for wrongful seizure against defendant, Michigan Basic, and all insurers who had allowed defendant to seize insurance proceeds by naming defendant as payee.

On May 7, 1986, defendant moved for summary disposition under MCR 2.116(C)(8), failure to state a claim, alleging that § 47, which authorized seizure of personal assets for unpaid property taxes, authorized the seizure of insurance proceeds for satisfaction of plaintiff's delinquent taxes. Defendant's motion was denied on February 27, 1987. On March 17, 1987, defendant moved for reconsideration of its motion for summary disposition, alleging that under MCL 205.731; MSA 7.650(31)

the Michigan Tax Tribunal had original and exclusive jurisdiction over plaintiff's claim, which defendant argued was in reality an action for a refund of the tax. In response, plaintiff claimed that the instant case was a dispute over defendant's method of collecting taxes and not over the validity of the tax itself. Defendant brought a second motion for summary disposition, alleging lack of subject-matter jurisdiction. Following a hearing, defendant's second motion for summary disposition was denied on May 18, 1987.

On September 1, 1987, the trial court issued an opinion on the parties' cross-motions for summary disposition, addressing the issue of whether plaintiff failed to state a claim under § 47. The court ruled that § 47 authorized defendant to distrain or seize and sell personal property to satisfy unpaid taxes, but that personal property which cannot be distrained or seized and sold in fact or law may not be seized by defendant's treasurer. Because rights under an insurance policy and proceeds of fire insurance in the hands of the insurer cannot be distrained or seized in the common meaning of those terms, the court concluded that defendant had no authority for its seizure of plaintiff's fire insurance benefits. On October 23, 1987, an order was entered denying defendant's motion for summary disposition and granting plaintiff's motion for partial summary disposition.

I

Defendant first argues that the trial court erred in denying its motion for summary disposition under MCR 2.116(C)(4), lack of subject-matter jurisdiction (Docket No. 100897). Defendant contends that the basis of plaintiff's claim for a return of fire insurance proceeds seized by defendant to

satisfy unpaid property taxes is, in reality, a proceeding for a refund of taxes. Thus, the claim falls within the exclusive jurisdiction of the Tax Tribunal under MCL 205.731(b); MSA 7.650(31)(b). Plaintiff claims that this is not a dispute over an assessment or a proceeding for a refund, but rather a dispute concerning the legality of defendant's method of collecting property taxes. Plaintiff contends that, in this case, the circuit court has jurisdiction. The trial court agreed with plaintiff's position and ruled that, because this was a dispute over the method of collecting taxes, it was not within the exclusive jurisdiction of the Tax Tribunal. We agree.

MCL 600.601; MSA 27A.601 provides:

Circuit courts have the power and jurisdiction

(1) possessed by courts of record at the common law, as altered by the constitution and laws of this state and the rules of the supreme court, and

(2) possessed by courts and judges in chancery in England on March 1, 1847, as altered by the constitution and laws of this state and the rules of the supreme court, and

(3) prescribed by rule of the supreme court.

However, MCL 205.731; MSA 7.650(31) provides:

The tribunal's exclusive and original jurisdiction shall be:

(a) A proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under property tax laws.

(b) A proceeding for refund or redetermination of a tax under the property tax laws.

Although the circuit court's jurisdiction and

powers are broad, it lacks jurisdiction where prohibited by the laws of this state. *Wikman v Novi,* 413 Mich 617, 644-645; 322 NW2d 103 (1982). In matters of taxation, the circuit court retains jurisdiction to entertain constitutional issues concerning the validity of tax laws and it may provide equitable relief from decisions of the Tax Tribunal. *Sessa v State Tax Comm,* 134 Mich App 767, 771; 351 NW2d 863 (1984), lv den 422 Mich 919 (1985); *Kostyu v Dep't of Treasury,* 170 Mich App 123, 128; 427 NW2d 566 (1988).

The Tax Tribunal's jurisdiction and powers are defined by the Tax Tribunal Act, MCL 205.701 *et seq.*; MSA 7.650(1) *et seq.* The Tax Tribunal lacks equitable powers. It is a quasi-judicial agency. Its primary functions are to find facts and review the decisions of agencies within its jurisdiction. *Wikman,* p 629. The expertise of the Tax Tribunal relates primarily to questions concerning the factual underpinnings of taxes. It is well qualified to resolve disputes concerning those matters that the Legislature has placed within its jurisdiction: assessments, evaluation, rates, allocation and equalization. *Romulus City Treasurer v Wayne Co Drain Comm'r,* 413 Mich 728, 737-738; 322 NW2d 152 (1982).

In the instant case, plaintiff has not challenged a final decision regarding valuation, rates, allocation or assessment, nor is plaintiff asking for a refund or a redetermination of a tax. Rather, plaintiff has challenged the legality of the *method* used by defendant to enforce collection of the property taxes. Resolution of this issue depends not on findings of fact, but on conclusions of law based upon the construction of § 47. This is clearly within the scope of the circuit court's jurisdiction. Thus, the trial court did not err by denying defendant's motion for summary disposition pursuant to

MCR 2.116(C)(4), lack of subject-matter jurisdiction.

II

As part of its order of October 23, 1987, denying defendant's motion for summary disposition (Docket No. 104378), the court ordered that defendant was enjoined from claiming, imposing or asserting any liens for unpaid property taxes or unpaid water or sewage bills against any insurance proceeds. Defendant claims that this order enjoining it from imposing liens for unpaid taxes on fire insurance proceeds constituted a violation of MCL 211.114; MSA 7.168, which states:

> No injunction shall issue to stay proceedings for the assessment or collection of taxes under this act.

The general rule is that equity will not enjoin the assessment or collection of taxes. *Forest Hill Cemetery Co v Ann Arbor,* 303 Mich 56, 67; 5 NW2d 564 (1942). In the instant case, the court's order did not restrain defendant from collecting property taxes by any statutorily authorized method. Defendant was not enjoined from assessing or collecting taxes "under this act." The court held that the act did not authorize defendant to levy against or seize insurance proceeds to satisfy unpaid taxes. Thus, defendant was enjoined from doing so. The circuit court did not improperly enjoin defendant from collecting taxes in violation of MCL 211.114; MSA 7.168.

III

When this case was decided in the trial court, MCL 211.47; MSA 7.91 provided in part:

> *If any person,* firm or corporation *shall neglect or refuse to pay any tax* assessed to him or them, *the township or city treasurer,* as the case may be, *shall collect the same by seizing the personal property of such person,* firm or corporation, *to an amount sufficient to pay such tax, fees and charges for subsequent sale,* wherever the same may be found [in the state], *and from which seizure no property shall be exempt.* He may sell the property seized to an amount sufficient to pay the taxes and all charges, in the place where seized, or in the township or city of which he is treasurer, at public auction . . . . If the property so distrained cannot be sold for want of bidders, and in such cases only, the treasurer shall return a statement of the fact, and such tax shall be returned as unpaid. *The township treasurer, if otherwise unable to collect a tax on personal property, may sue the person, firm or corporation to whom it is assessed, in the name of the township, village or city, and garnishee any debtor or debtors of such person, firm or corporation.* [Emphasis added.]

The heart of the parties' dispute centers on the language of the above quoted statute. Defendant contends that the clear and express language of the statute authorizes seizure of any personal property, including intangible personal property such as insurance proceeds, to satisfy delinquent real property taxes.

A fundamental rule of statutory construction is that the court is obliged to ascertain and give effect to the intention of the Legislature, and it is equally axiomatic that words are to be given their ordinary, normally accepted meaning. *Town & Country Dodge, Inc v Dep't of Treasury,* 420 Mich 226, 240; 362 NW2d 618 (1984), reh den 421 Mich 1202 (1985). Where the meaning of a statute is plain and unambiguous, judicial construction or interpretation is precluded. *Land v The George Schmidt Co,* 122 Mich App 167, 170; 333 NW2d 30

(1982), lv den 417 Mich 1083 (1983). When determining legislative intent, statutory language should be given a reasonable construction considering the statute's purpose and the object sought to be accomplished. An act must be read in its entirety and the meaning given to one section arrived at after due consideration of other sections so as to produce, if possible, a harmonious and consistent enactment as a whole. Statutes are to be construed so as to avoid absurd or unreasonable consequences. *Michigan Humane Society v Natural Resources Comm,* 158 Mich App 393, 401; 404 NW2d 757 (1987); *Bar Processing Corp v State Tax Comm,* 171 Mich App 472, 477; 430 NW2d 753 (1988).

Property tax exactions must rest upon legislative enactment, and collecting officers can only act within express authority conferred by law. Tax collectors must be able to point to such express authority. The scope of tax laws may not be extended by implication or forced construction. *Michigan Allied Dairy Ass'n v State Bd of Tax Administration,* 302 Mich 643, 650; 5 NW2d 516 (1942); *Fidlin v Collison,* 9 Mich App 157, 162; 156 NW2d 53 (1967).

Here, the trial court held:

> The Court is persuaded that § 47 authorizes the city treasurer to distrain, seize and sell personal property to satisfy unpaid taxes, and that personal property which cannot be distrained, seized and sold in fact or in law may not be seized by the city treasurer under § 47. Rights under an insurance policy and proceeds of fire insurance in the hands of the insurer cannot be distrained or seized within the commonly understood meaning of those terms. The City's attempt to do so is therefore without authority. Such a construction of § 47 is consistent with the plain language of this section,

the history of self-help collection methods such as distraint and the law relating to executions upon judgments, and the distinction drawn in § 47 between real and personal property taxes in that the city treasurer may maintain a suit upon and garnishee a taxpayer's debtors to enforce the obligation to pay the latter but not the former.

In claiming that the statute authorizes defendant to seize insurance proceeds, defendant focuses on the phrase "from which seizure no property shall be exempt" and on the use of the permissive term "may sell" to conclude that the statute allows seizure of types of personal property that cannot be sold at public auction. Defendant's interpretation of the statute ignores the plain meaning of the wording chosen by the Legislature. The statute clearly provides that the township or city treasurer "shall collect" delinquent taxes "by seizing the personal property [of the taxpayer] *for subsequent sale* . . . and from which seizure no property shall be exempt." (Emphasis added.) The language selected by the Legislature clearly contemplates seizure of property that is capable of being sold. The permissive language of the statute, "he may sell the property seized," refers to the treasurer's choice to sell the property either "in the place where seized, or in the township or city of which he is treasurer." The choice given to the treasurer is not between whether to sell or not sell. We conclude that the trial court correctly construed the statute. The property seized must be capable of being sold. Any other holding requires construction of the terms beyond their plain meaning. There is no express authority to seize insurance proceeds or other intangibles. Thus, the seizure of the proceeds by defendant was illegal as unauthorized by statute.

Further, the seizure was illegal because the

amount distrained was excessive. Section 47 provides that the amount of property distrained must not be excessive and, if it is, the seizure is illegal. *Fidlin, supra,* p 167. The city treasurer is allowed only to seize personal property "to an amount sufficient to pay such tax." Defendant, in essence, seized the entire insurance settlement of $13,218.81 in order to collect delinquent taxes of $2,343. Plaintiff was unable to recover or have use of any of its insurance proceeds until it paid the back taxes.

Defendant is a home rule city. MCL 117.1 *et seq.*; MSA 5.2071 *et seq.* A home rule city cannot exceed its charter powers and confer prohibited authority upon itself by a particular method of usurpation. *City of Niles v Michigan Gas & Electric Co,* 273 Mich 255, 266; 262 NW 900 (1935). After approval and filing, a city charter thereupon becomes law. MCL 117.24; MSA 5.2103; *Sykes v Battle Creek,* 288 Mich 660, 663; 286 NW 117 (1939); *Wikman, supra,* pp 636-637. MCL 117.3(i); MSA 5.2073(i) states that each city charter shall provide for the levy, collection and return of taxes in conformance with the general laws of the state. However, no provision of any city charter shall conflict with or contravene the provisions of any general law of the state. MCL 117.36; MSA 5.2116. Thus, to determine whether defendant has the authority to seize insurance proceeds, the initial inquiry must begin with the city charter.

Defendant's charter limits defendant's remedy to an action for foreclosure on the tax lien. Section 8-403 of the Detroit City Code provides that the city may bring a civil action to foreclose its lien two years after the city's lien on real property for delinquent city real property taxes accrues. The city's charter does not provide any other method for the city to collect delinquent real property

taxes. Even if § 47 were to allow the city treasurer to place a lien on insurance proceeds, defendant's own charter does not authorize it to do so. The General Property Tax Act does not apply to cities whose charters provide inconsistent provisions. MCL 211.107; MSA 7.161.

We reject defendant's additional argument that policy and equitable considerations require reversal of the circuit court. Defendant contends that an exception to the fundamental rules of statutory construction exists where a literal reading of statutory language produces an absurd and unjust result clearly inconsistent with the purposes and policies of the act in question. *Owendale-Gagetown School Dist v State Bd of Ed,* 413 Mich 1, 8; 317 NW2d 529 (1982); *Salas v Clements,* 399 Mich 103, 109; 247 NW 889 (1976). Defendant argues that this is a case in which the literal reading of the statute circumvents the legislative intent which favors the summary collection of taxes. *Thompson v Auditor General,* 261 Mich 624, 648; 247 NW 360 (1933). We do not dispute the existence of the exception, and we do agree that the result here is both absurd and unjust. However, it has long been held that governmental powers of taxation are controlled by constitutional and statutory provisions. Hence, it is not possible to adjudicate issues arising under taxation laws by the general application of equitable principles. *Consumers Power Co v Muskegon Co,* 346 Mich 243, 247; 78 NW2d 223 (1956).

Before its recent amendments, § 47 provided a clear distinction between the collection of real and personal property taxes. Distraint (distress) and sale of personal property was available for collection of both, but only personal property taxes could be collected by suit. In such cases, the treasurer could garnishee any debtor of the taxpayer.

The treasurer could sue only where no property was available on which to levy. The statutory remedies available to the treasurer were explained in *Staley v Columbus Twp,* 36 Mich 38, 39 (1877):

> The only case provided for by statute wherein suit may be brought for unpaid taxes by the township is where taxes on personalty have been returned unpaid for want of property on which to levy.—C.L., § 1014. In such case the treasurer may sue in the name of the township. Taxes on real estate may be collected by distress on goods and chattels (§ 1003), but if not so collected the tax is returned unpaid and the land sold to make it.
>
> The tax-roll is itself as complete and adequate as an execution on a judgment would be, if there are goods and chattels within the treasurer's jurisdiction. It would be a foolish ceremony to sue for land taxes when the land itself can be sold to pay them. But where personal taxes are unpaid, the debtor may have property subject to execution not open to seizure and sale by the treasurer, and a suit is in such case proper and necessary to secure payment. The statutory provisions are based on plain policy, and preclude the idea of suit in any case not named.

Until the recent amendments to § 47, these remedies remained unchanged. The recent amendments to § 47, being 1987 PA 177 (effective November 19, 1987) and 1988 PA 202 (effective June 29, 1988), have eradicated the distinction between real and personal property taxes insofar as enabling the township or city treasurer to sue the errant taxpayer and garnishee any debtor of that taxpayer. Further, the municipality may choose to file suit in lieu of seizure and public sale. Whether these amendments permit a municipality to seize insurance proceeds is a question we will not address in this opinion as the amendments were not in force during the pendency of this case.

While we affirm the well-reasoned opinion and orders of the trial court because we conclude that it correctly determined § 47 does not authorize a municipality to place a lien on insurance proceeds and because defendant's own city charter does not authorize such procedure, we also conclude that this has produced an absurd and unjust result. Plaintiff is able to avoid paying taxes which it agrees are accurate in amount and owed to defendant. Pursuant to its charter, defendant's only remedy at this point is to foreclose and attempt to sell the property upon which stands a burned-out shell.

Affirmed.